UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY J. MICAL and LUTGARDA C. MICAL, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 13-cv-6508 |
| v. | ) ) ) | Honorable Charles P. Kocoras |
| PHILIP J. GLICK, ALAN E. CASE, LYNN HIRSCHFELD BRAHIN, and E*TRADE SECURITIES LLC, | ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT, E*TRADE SECURITIES LLC, TO DISMISS COMPLAINT AND TO CONFIRM ARBITRATION AWARD

Defendant, E*TRADE Securities LLC ("E*TRADE"), by its attorneys, has moved the Court to dismiss Plaintiffs' Complaint (Docket No. 1) and Plaintiffs' Amended Complaint (Docket No. 16) pursuant to Fed. R. Civ. P. 12(b)(6) and to confirm the Award (as defined below) pursuant to 9 U.S.C § 9. E*TRADE submits this memorandum of law in further support of its motion.

### INTRODUCTION

Dissatisfied with the result in the arbitration process to which they previously agreed, Plaintiffs now ask this Court to review and evaluate the evidence considered by the panel and over-turn the arbitration panel's Award. As more fully discussed below, judicial review of an arbitration award is strictly limited and every presumption is in favor of the validity of an arbitration panel's decision. Plaintiffs have not shown, and cannot show, that any of the narrow grounds for vacatur or modification exist here. Indeed, despite couching their argument in the terminology of the vacatur provisions of the Federal Arbitration Act (the "FAA"), Plaintiffs

merely complain that the panel erred in interpreting the facts presented at the arbitration. Under the FAA, however, courts do not review the factual and legal determinations made in arbitration. Plaintiffs here received a full and fair opportunity to present their case to the panel, which rendered its Award according to applicable rules. There is no evidence or argument of any abnormalities in the arbitration process or the arbitrators themselves. Accordingly, the panel's decision must stand, Plaintiffs' Amended Complaint should be dismissed with prejudice, and the Court should enter an order confirming the Award.

## BACKGROUND FACTS

The material facts stated herein are supported by reference to the Complaint and the Amended Complaint. Additional facts in support of E*TRADE's motion to confirm the Award are supported by the Declaration of Meredith Felde Hoffman (the "Hoffman Decl.") and the exhibits thereto filed contemporaneously herewith.

In January 2008, Plaintiffs opened an account with E*TRADE. (Hoffman Decl., ¶ 7). E*TRADE's customer agreement contains an arbitration provision, pursuant to which Plaintiffs agreed to resolve by binding arbitration any controversy that may arise between Plaintiffs and E*TRADE. (Hoffman Decl., ¶¶ 7–9 & Exhs. B, C, and D). Moreover, Plaintiffs agreed that any such arbitration would be conducted in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") then in effect. (Hoffman Decl., ¶¶ 7–9 & Exhs. B, C, and D).

On or about July 5, 2011, Plaintiffs filed a "Statement of Claim" with FINRA Dispute Resolution, Inc. against E*TRADE initiating the arbitration proceedings. On or about September 7, 2011, E*TRADE filed its Answer and Counterclaim in the arbitration. (Complaint, Exh. 1; Hoffman Declaration, ¶ 11).

The factual allegations in Plaintiffs' Statement of Claim concerned a margin call issued on Plaintiffs' account on July 1, 2008. At the end of June 2008, Plaintiffs held securities in their E*TRADE account valued at $1,780,268.90 but owed E*TRADE a margin debt of $1,773,7125.50. (Hoffman Decl., ¶ 11). E*TRADE issued a written margin call on July 1, 2008, advising Plaintiffs that they could satisfy the call by depositing additional cash, liquidating securities, or depositing additional marginable securities. (Complaint, Exh. 2). By July 7, 2008, the positions of Plaintiff's account had diminished such that the account had negative equity. (Amd. Complaint, at 6, 12; Hoffman Decl. ¶ 11).

Plaintiffs alleged in their Statement of Claim that E*TRADE negligently liquidated their securities account following this margin call. Specifically, Plaintiffs alleged that rather than liquidate Plaintiffs open stock and option positions in securities, E*TRADE's margin department should have given them until the close of business on July 7, 2008, to transfer funds to cover a margin call.[1] (Amd. Complaint, at 3).

E*TRADE denied the allegations in the Statement of Claim, including the Plaintiffs' recitation of the facts. (Hoffman Decl., ¶ 11). The dispute largely involves statements made during a phone conversation on July 7, 2008 between Mr. Mical and one of E*TRADE's representatives. (Amd. Complaint, at 3-11). E*TRADE's position at arbitration was that during the phone conversation, Mr. Mical indicated that he did not intend to meet the margin call issued on July 1, 2008. (Hoffman Decl., ¶ 11). Following, the July 7, 2008 phone conversation, pursuant to the terms and conditions in the E*TRADE Customer Agreement, E*TRADE sold the

---

[1] Plaintiffs also asserted in the arbitration that E*TRADE's margin department should have allowed Plaintiffs to sell stock and hold naked call option positions to cover the margin call or accept Plaintiffs' offer to assign the proceeds of a class action settlement to E*TRADE. (Complaint, Exh. 1, at 2). The Complaint, however, repudiates these assertions. (Complaint, at 1). In any event, the arguments made by either party during the arbitration are not relevant to the issues before this Court.

- 3 -

stocks in the account and bought securities to cover open call options that Plaintiffs had written against the account. (Hoffman Decl., ¶ 11 & Exh. D, at 36–40). As of July 31, 2008, there was a negative balance of $60,079.40 on the Plaintiffs' account. (Hoffman Decl., ¶ 11).

An arbitration hearing was conducted during five sessions in June 2013. Prior to the arbitration hearing, both parties conducted discovery and appeared before one or more of the arbitrators for four pre-hearing sessions. (Complaint, Exh. 1, at 4-5). During the arbitration hearing, both parties presented their arguments before the panel. (Complaint, Exh. 1, at 3-5). The arbitrators heard evidence, including the audio tape of the July 7, 2008 phone call. The panel of arbitrators entered their award on June 14, 2013 (the "Award"), finding *inter alia* that the allegations in the Statement of Claim were false. (Hoffman Decl., ¶ 12 & Exh. A).

## ARGUMENT

### A. Plaintiffs Fail to Present Sufficient Support for this Court to Review and Over-Turn the Arbitration Panel's Award.

The Seventh Circuit has consistently held that the scope of judicial review of arbitration awards is exceedingly narrow. *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691 (7th Cir. 2004) ("Generally, a court will set aside an arbitration award only in 'very unusual circumstances.'" (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995))); *Baravati v. Josephtal, Lyon & Ross Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not to be called 'review' at all."). Narrow judicial review of arbitration awards stems from the federal statutes strong endorsement of arbitration as a favored method of resolving disputes. *Rodriguez De Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481 (1989). Because arbitration provides parties with a private system of justice with reduced delay and expense, if the courts could broadly review arbitral awards, the process of "arbitration would just be the first of a series of

steps that always culminated in court litigation, and it would lose its *raison d'être*." *Butler Mfg. Co. v. United Steel Workers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003); *see also Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994).

Accordingly, "courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing the decisions of lower courts." *United Paperworkers Int'l Union, AFL-CIO v. Misco. Inc.*, 484 U.S. 29, 38 (1987); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("It is tempting to think that Courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not"); *Eljer Mfg., Inc.*, 14 F.3d at 1254 ("Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review."). Indeed, parties are not entitled to reargue their claims in a proceeding to vacate an arbitral award, and litigation like this defeats the goal of arbitration to provide a quick and cheap decision. *Flexible Mfg. Sys. Pty., Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996).

"A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstance delineated by statute and case law." *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006). The party must show, not that the arbitrator erred, but that the arbitrator violated the agreement to arbitrate, by demonstrating one of the following exclusive grounds for setting aside an arbitration award under the FAA:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of

>any other misbehavior by which the rights of any party have been prejudiced; or
>
>(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). Although courts will also set aside arbitration awards that are in "manifest disregard of the law," the Seventh Circuit has defined this non-statutory ground so narrowly that its falls under the fourth statutory ground above and is confined to cases where arbitrators direct the parties to violate the law. *Wise*, 450 F.3d at 268–69.

In the matter at hand, Plaintiffs allege that subsections (2) and (3) apply and that, accordingly, the Court should vacate the Award. Plaintiffs also allege that the Court should modify the Award per § 11(a). Nevertheless, Plaintiffs do not identify any misconduct or partiality, but rather simply disagree with the factual determinations made, asserting that this Court should serve as a court of appeal to the arbitration panel. Because Plaintiffs do not meet the high burden necessary to vacate or modify the Award, this Court should dismiss Plaintiffs' Amended Complaint and enter an order confirming the Award.

### B. There Is No Evidence or Allegations of Evident Partiality or Corruption.

Plaintiffs' complaint under § 10(a)(2) must fail because Plaintiffs have not alleged, much less identified, any partiality or corruption on the part of the arbitrators. Rather, Plaintiffs allege that the "arbitrators *were in error* and were partial in approving the immediate liquidation of the Plaintiffs' account . . . ." (Amd. Complaint, at 15 (emphasis added)). The crux of Plaintiffs' contention is that the arbitrators must have been partial, because they erred. This, however, does not satisfy the standard to vacate under § 10(a)(2).

To prevail under § 10(a)(2), Plaintiffs must show "'evident partiality or corruption,' which the Seventh Circuit has defined as 'actual bias' or circumstances that are 'powerfully

suggestive of bias.'" *Lashco, Inc. v. Erickson*, 700 F. Supp. 960, 963 (N.D. Ill. 1988) (quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680-81 (7th Cir. 1983), *mandate modified*, 728 F.2d 943 (7th Cir. 1984)). "Arbitration differs from adjudication, among many other ways, because the 'appearance of partiality' ground of disqualification for judges does not apply to arbitrators; only *evident* partiality, not appearances or risks, spoils an award." *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 307 F.3d 617, 621 (7th Cir. 2002) (emphasis added).

But there is no suggestion of bias here, let alone evidence of bias. The arbitrators were selected according to FINRA's arbitration rules. Plaintiffs were provided with an employment history and other background information for 30 potential arbitrators selected at random from three separate rosters. *See* FINRA Rule 12403. Each party had the opportunity to strike the names of potential arbitrators and rank the remaining names by order of preference. *See* FINRA Rule 12403. If any circumstances existed that might have precluded an arbitrator from rendering an objective and impartial determination in the proceeding, such circumstances would have been disclosed. *See* FINRA Rule 12405. Moreover, there is absolutely no indication here that any of the arbitrators had any direct or indirect financial or personal interest in the outcome of the arbitration or that any of the arbitrators or any family member of the arbitrators had any existing or prior relationship with any of the parties. In other words, there is no evidence of bias whatsoever.

Plaintiffs do not allege bias because Plaintiffs contend that the alleged error itself demonstrated partiality. Review of an arbitration award, however, is procedural, not substantive. The Seventh Circuit has repeatedly held that "neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001); *see also Flexible Mfg. Sys. Pty.*, 86 F.3d at 100 (holding that courts will not

overturn an arbitration decision for mere errors or judgment as to law or fact); *Gingiss Int'l., Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995) (same); *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994) (same). As such, even if the arbitrators erred, such error is not evidence of bias. Notwithstanding Plaintiffs' dissatisfaction with the outcome of the arbitration, because no evidence of bias or partiality exists, there is no cause to vacate the Award under § 10(a)(2).

### D. The Arbitrators Are Not Guilty of Misconduct that Prejudiced Plaintiffs.

Next, Plaintiffs contend that the arbitrators are guilty of misconduct, but again, no evidence of misconduct or prejudice is alleged, much less demonstrated. Like Plaintiffs' contention regarding the alleged partiality of the arbitrators, Plaintiffs here allege that the arbitrators are guilty of misconduct because they accepted E*TRADE's position. (Amd. Complaint, at 12). Plaintiffs also contend that the arbitrators were guilty of misconduct because they failed to hear evidence, but Plaintiffs do not point to any evidence that was actually excluded. Rather, Plaintiffs identify evidence that *was heard by the panel*, but complain of misconduct because the evidence did not persuade the panel to accept Plaintiffs' position. (Amd. Complaint, at 3–11). Failure to agree with Plaintiffs' position, however, is not "misconduct" and no cause exists here to vacate the award under § 10(a)(3).

Section 10(a)(3) of the FAA provides that an award may be vacated where the arbitrator was "guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992). "[A]rbitrators are not required to hear all the evidence tendered by the parties; they need only afford each party a fair opportunity to present their

arguments and evidence. An arbitration panel, like a trial court, enjoys broad discretion in deciding whether to allow testimony." *Questar Capital Corp. v. Gorter*, 909 F. Supp. 2d 789, 821 (W.D. Ky. 2012) (internal citations omitted). Even if an arbitrator erred in not hearing evidence, to vacate an award "such an error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir. 1968). As such "a petitioner must show that the excluded evidence was material to the arbitrators' determination and that their refusal to hear the evidence was so prejudicial that the party was denied fundamental fairness." *Questar Capital Corp.*, 909 F. Supp. 2d, at 816, 821.

Plaintiffs have not made such a showing here. The principal contentions in the Amended Complaint are that the "arbitrators were guilty of misconduct in refusing to hear evidence that" in the July 7, 2008 phone conversation, "the E*TRADE Representative was demanding that the Plaintiffs have available in excess of $111,000, not the $35,000 margin call. . . ." (Amd. Complaint, at 4). But later in the same paragraph, Plaintiffs acknowledge that the arbitrators listened to the tape recording of the July 7, 2013 phone call, complaining instead that the tape was not "replayed." (Amd. Complaint, at 7) (emphasis removed). As the complaint further recognizes, the arbitrators heard the tape, read the transcript, listened to Plaintiffs' comments, and listened to E*TRADE's comments. (Amd. Complaint, at 10-11). The arbitrators did not exclude any evidence relating to any material issues. They were simply not persuaded by Plaintiffs' evidence.

Plaintiffs were provided a fundamentally fair arbitration process. Plaintiffs submitted various briefs, conducted discovery, and presented evidence and legal arguments over the course of a three-day hearing. Plaintiffs do not point to any specific evidence that the panel failed to

receive. Rather, Plaintiffs make vague and conclusory statements and seem to take issue with the weight accorded to certain evidence actually considered by the panel. However, a party's "assertion that the arbitrators failed to give the evidence the consideration it deserved must be rejected as an improper attempt to probe the collective minds of the arbitrators as to how they reached their judgment." *In re Arbitration Between Interdigital Commc'ns Corp. & Samsung Elecs. Co., Ltd.*, 528 F. Supp. 2d 340, 352 (S.D.N.Y. 2007) (internal quotation marks omitted). Accordingly, Plaintiffs do not and cannot demonstrate that the arbitrators were guilty of misconduct as to justify vacatur of the arbitration award.

### E. No Cause Exists to Modify the Award.

Plaintiffs request that this Court modify the Award because the arbitrators made a "material miscalculation" and a "material mistake" in "accepting E*TRADE's immediate liquidation of the Plaintiffs account." (Amd. Complaint, at 14-15). But again, this argument is merely a restatement of Plaintiffs' position that the arbitrators made errors of fact, and this Court should serve as a court of appeals to review the findings of fact and conclusion of law of the arbitration panel.

Under the FAA, the Court "may make an order modifying or correcting the award upon the application of any party to the arbitration . . . [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). An evident material miscalculation of figures or an evident material mistake exists where on the face the award, the arbitrator clearly erred in adding figures or describing some person, place, or thing. For instance, miscalculating figures to provide a double recovery to a party, or transposing the word "claimant" where it is clear from context that the arbitrator meant the word "respondent" would constitute evident

material mistake. *See, e.g., Eljer Mfg., Inc.*, 14 F.3d at 1254 (providing the former example). Moreover, "the court will not alter an arbitration award where no mathematical error appears *on the face of the award*." *C.F.M.I., Inc. v. Felish*, Case No. 96-C-3547, 1999 WL 637196, at *2 (N.D. Ill. Aug. 14, 1999) (emphasis added).

As with their other contentions, Plaintiffs are merely attempting to reargue their case before this Court. Here, other than fees assessed to both parties as part of the arbitration, there are no mathematical calculations appearing in the Award. Moreover, there are no descriptions of any person, place, or thing that materially affect the award. Indeed, there is no indication in any way that the arbitrators erred in denying Plaintiffs' claim. Accordingly, because Plaintiffs fail to allege a material miscalculation or mistake in describing any person or thing without relying on extrinsic evidence, Plaintiffs' request to modify the award must be denied.

### F. The Court Should Enter an Order Confirming the Award.

As set forth in § 9 of the FAA, "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9; *see also Int'l Union of Operating Eng'rs., Local No. 841 v. Murphy Co.*, 82 F.3d 185, 188 (7th Cir. 1996) ("The FAA . . . dictates that the district court 'must grant' a timely order confirming an arbitration award unless the award has been vacated, modified, or corrected."). "Confirming an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 780–81 (N.D. Ill. 2005) (internal quotation marks omitted). "If the district judge is satisfied that the arbitrators resolved

the entire dispute and can figure out what that resolution is, he must confirm the award." *IDS Life Ins. Co.*, 266 F.3d, at 650–51.

As set forth in detail above, because no cause exists to vacate or modify the Award, the Court should enter an order confirming the Award. Although FINRA Rules requires that parties seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party, FINRA has waived the requirement to be named as an additional party to this case. (Hoffman Decl., ¶ 13 & Exh. E).

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Amended Compliant and enter an order confirming the Award.

Dated: December 9, 2013  E*TRADE Securities LLC

By: /s/Aaron B. Chapin
One of its attorneys

James T. Hultquist (IL No. 6204320)
Aaron B. Chapin (IL No. 6292540)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
(312) 207-1000 (telephone)
(312) 207-6400 (facsimile)